Putnam J.
The Court are all of opinion, as to the matter of law in this case, that the verdict ought to stand. The objection was,' that the plaintiff had not a lawful and exclusive possession of the premises, and so could not maintain trespass guare clausum fregit. It is found by the case, that Deidamia Rogers, the mortgagee, had entered under the mortgage. She had a perfect right to do so, and the plaintiff was in possession, as tenant at will of Mrs. Rogers. The entry of the mortgager upon the plaintiff was therefore unjustifiable.[1]
As to the question, whether a new trial should be granted because the damages are excessive, the Court are equally divided : ** so the motion for a new trial upon that ground cannot prevail.
Those of the Court who are against a new trial for this cause, think there was such a combination of oppression and personal violence and indignity attending the trespass, as fully to justify the verdict.
*227 The defendants acted under a full knowledge of the plaintiff’s claims, and after reflection and preparation. They were informed that Mrs. Rogers had taken possession under her mortgage, and given the plaintiff leave to reside in the house. But they were resolved, as some of them said, to 66 clear the house,” and they proceeded to break open the door, and to expel and remove the plaintiff, his wife, children, and goods.
All the suggestions have been made by the counsel for the defendant, which occur to us as having a tendency to show that the damages are excessive. It has been argued that the defendants were in the exercise of what they supposed to be their legal rights, and that there was little or no damage done to the goods or to the persons of the plaintiff or his family. The suggestion that the defendants might have believed that the entry of the mortgagee was unlawful, would be entitled to more consideration, if it were not against one of the rules of the law which is clear and generally understood in the community. But the jury had reason to think, that some, if not all of the defendants knew, but wholly disregarded the provision of the law, and supposed that the trespass could be committed with impunity on account of the poverty of the plaintiff; for one of the defendants (Goodrich) stated to a witness, in answer to his inquiry, whether he thought the plaintiff could not make him suffer, that ec the plaintiff had Been to gaol and sworn out, and was not able to do any thing." Now that circumstance was to be taken into consideration by the jury. There is nothing more abhorrent to the feelings of the subjects of a free government, than oppressing the poor and distressed under the forms and color, but really in violation of the law. An intelligent and impartial jury may and ought to be influenced by the proof of such an act committed by the defendants. It is true that no more violence was done to the persons of the plaintiff and his family, than was necessary to drive or force them out of the house. But the mental suffering which must have been endured, was a cause for damages, which the jury might and ought to have considered, and they were bound properly to compensate ns
*228 damages for the personal insult and indignity, as well as for the violence that was used in the expulsion.
To view this matter in a reasonable manner, we must consider the plaintiff and his family as lawfully and peaceably in the possession of the dwellinghouse; and although he had only an estate at will, yet that was as good against a trespasser, as if he had been seised of a fee simple The house was his castle, and as such, under the protection of the law. We must consider the defendants as mere wilful trespassers ; and we must also recollect the manner in which the outrage was conducted. It is found that they took the plaintiff by the shoulder, and (to use their language) “ huddled him out of the house.” They took hold of the plaintiff’s wife and compelled her to go out of the house into the highway, with an infant child in her arms, and destitute of convenient clothing, which she in vain attempted to find among the goods which were put into the road. All the furniture was put out of the house into a heap in the highway, and the plaintiff’s papers were blown about the road, and some articles of clothing were driven by the wind several rods from the house. The case finds, as might have been supposed, that during this scene the wife was greatly agitated. The plaintiff resisted as long as he could, but was obliged to yield to the greater force of the defendants. It is found that the dwellinghouse was small, but the damages are not to be graduated by the size of the building. The plaintiff also was poor. He had' seen better days, but had been reduced in his circumstances. He was thought not able to do any thing in vindication of his rights at the law. But in this the defendants miscalculated. His case has been submitted to a jury of his country, and they have assessed 500 dollars as the damages which he should recover. The jury seem to us to have manifested a strong sense of the security which the dwellinghouse should afford Jo its lawful possessor. They have proceeded upon higher grounds of damages, than those which arise merely from bodily wounds and bruises. They have discovered a determination to vindicate the rights of the poor against the aggressions of power and violence. These motives are sound, and should be cherished; and we ascribe the amount of the verdict to *229 those considerations, rather than to partiality, or passion, or any unworthy motive.[1]
The motion for a new trial cannot be sustained, and the judgment is to be rendered upon the verdict.

 See Pettengill v. Evans, 5 N. Hamp. R. 54.

 Parker C. J. and Putnam J. being against, and Wilde J. and Morton J in favor of, granting a new trial.

 See Clark v. Binney, 2 Pick. (2nd ed.) 121, n. 1, and cases there collected; Cox v. Dugdale, 12 Price, 708; Dodd v. Hamilton, 2 Taylor, 31; Chancellor v. Vaughn, 2 Bay, 416; Revised Stat. c. 93, § 9.